# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| TERRY W. SMITH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. CIV-10-413-FHS-SPS |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Terry W. Smith requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 16, 1961, and he was forty-eight years old at the time of the administrative hearing. He obtained his GED and earned an associate's degree in criminal justice. (Tr. 29). He has past relevant work as a police chief, government investigator, loss prevention officer, private investigator, welder, and security inspector. (Tr. 17, 61). The claimant alleges he has been unable to work since March 14, 2007 because of coronary artery disease, blocked arteries, arthritis, bad heart valve, high blood pressure, facial nerve damage, chronic pulmonary obstructive disease, and interstitial lung disease, interstitial fibrosis. (Tr. 146).

**Procedural History**

On April 27, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Jennie L. McLean conducted a hearing and determined that the claimant was not disabled in a decision dated March 24, 2010. The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had severe impairments (chronic obstructive pulmonary disease, atherosclerotic cardiovascular disease, high blood pressure, diabetes mellitus, and obesity) but retained the residual functional capacity ("RFC") to perform the following activities: i) occasionally lift and/or carry less than 10 to 100 pounds; ii) sit for six of eight hours and two hours at a time; iii) stand for two of eight hours and 15-20 minutes at a time; iv) walk for 20 minutes and six-eight minutes at a time; v) occasionally balance, kneel, and/or stoop and occasionally be exposed to significant unprotected heights, potentially dangerous, unguarded moving machinery, commercial driving, and climbing of stairs and ramps; and vi) occasionally reach, handle, finger, feel, push, pull and operate foot controls. (Tr. 15). Further, the ALJ found that the claimant should never crawl, crouch, climb ladders, ropes or scaffolds or be exposed to vibration, dust, fumes, odor, or gases. (Tr. 15). Finally, the ALJ opined that the claimant needed a climate-controlled environment with only occasional exposure to humidity and could be exposed to only very quiet to moderate noise levels (Tr. 15). The ALJ then concluded that the claimant was capable of returning to his past relevant work as a police chief (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to consider his capacity to perform the mental demands of his past relevant work as a police chief; (ii) by failing to properly analyze his credibility; and (iii) by failing to consider his obesity in accordance

with SSR 02-1. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the claimant's credibility.

On September 15, 2005, the claimant underwent a surgical procedure, *i. e.*, right carotid endarterectomy, to treat right carotid occlusive disease and symptoms of chest pain. During the procedure, doctors determined that claimant's right internal carotid artery was 90% occluded. (Tr. 260). Claimant continued to have pain in his neck and arterial blockage following his surgery. (Tr. 321). On May 30, 2007, during a visit with his treating physician Dr. Dennis Roberts, M.D., the claimant presented with complaints of fatigue and emotional stress (Tr. 338). The claimant testified that Dr. Roberts regularly recommends surgery to "fix one of the heart valves and . . . do bypasses of the blocked arteries inside [his] chest" but that claimant has declined to undergo the procedure because the results of his endarterectomy produced less than ideal results (Tr. 46). The claimant takes 100 nitroglycerin tablets each month (Tr. 47).

After reviewing claimant's medical records, state reviewing physician Dr. Shafeek Sanbar, M.D. completed a Physical Residual Functional Capacity Assessment on July 31, 2007. (Tr. 359-66). Dr. Sanbar opined that claimant was capable of occasionally lifting/carrying 10 pounds and frequently lifting/carrying less than 10 pounds, standing at least two hours in an eight-hour workday, sitting about six hours in an eight-hour workday, and unlimited pushing and pulling. (Tr. 360).

Claimant's treating physician Dr. Roberts completed a Physical Medical Source Statement on November 13, 2007. (Tr. 371-73). Dr. Roberts found that claimant was

capable of sitting for three hours in an eight-hour workday (with one hour of sitting at one time), standing for a total of two hours in an eight-hour workday (with 10-30 minutes of standing at a time), and walking for one hour during an eight-hour workday (with 10-30 minutes of walking at a time), respectively, during an eight-hour workday. (Tr. 371). Further, Dr. Roberts wrote that claimant was capable of occasionally lifting and/or carrying up to 10 pounds, that claimant was limited in his ability to push and pull with his feet, grasping in both hands and fingering in both hands. (Tr. 372). Dr. Roberts also found that the claimant was incapable of bending, squatting, crawling, and climbing, but he could occasionally reach. (Tr. 372). With regard to nonexertional limitations, Dr. Roberts found that claimant should never be exposed to the following: (i) unprotected heights; (ii) being around moving machinery; (iii) marked changes in temperature and humidity; and (iv) dust, fumes, and gases, but that claimant had mild restrictions in the areas of driving and vibrations (Tr. 372). With regard to written notes, Dr. Roberts expressed that the claimant's coronary artery disease severely restricts his activity. (Tr. 372).

Another Physical Residual Functional Capacity Assessment was completed by state reviewing physician Dr. Luther Woodcock, M.D. on November 21, 2007. (Tr. 374-81). Dr. Woodcock opined that claimant was capable of occasionally lifting/carrying 10 pounds, frequently lifting/carrying less than 10 pounds, standing/walking for at least 2 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. In reference to the treating source opinion of Dr. Roberts, Dr. Woodcock wrote that the "[m]edical

evidence in file does not support claimant not being able to sit longer than 3 hours in a 8-hour workday." (Tr. 380).

Finally, claimant was examined on May 4, 2009 by state consultative examiner Jerry D. First, M.D. During that examination, the claimant reported that he has frequent chest pain associated with shortness of breath, excessive sleepiness following bouts of chest pain, and decreased mentation, "relating that he has difficulty thinking as quickly as he should." (Tr. 405). The claimant reported that he has suffered several mini-strokes, which he felt were the causes of his decreased mentation. (Tr. 405). His medication list at that time was extensive, including, *inter alia*, Lyrica, hydrocodone, Ambien, and Plavix. (Tr. 405). Dr. First's impressions were that claimant suffered from, *inter alia*, atherosclerotic coronary artery disease, chronic stable angina, arthrosclerotic cerebral vascular disease stats post right carotid endarterectomy, essential hypertension, type II diabetes, and morbid obesity. Dr. First also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that claimant was capable of both occasional lifting and carrying of weights from 10-100 pounds and that his ability to lift was limited by chest pain and arthritis in his shoulder (Tr. 410). Further, Dr. First found that claimant was capable of sitting for six hours in an eight-hour workday (and two hours at a time), standing for two hours in an eight-hour workday (and 15-30 minutes at a time), and walking for twenty minutes during an eight-hour workday (and 5-6 minutes at a time). (Tr. 411). Dr. First also identified the following environmental limitations: (i) occasional exposure to unprotected heights, moving

mechanical parts, operating a motor vehicle, and humidity and wetness; and (ii) no exposure to dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations. (Tr. 414). The ALJ's findings at step four seem to align with the findings of Dr. First, whose opinion the ALJ gave great weight. (Tr. 17).

The claimant testified at the administrative hearing that during his surgery in 2005, the doctors damaged a nerve in his neck which causes numbness and pain on the right side of his face and neck. (Tr. 45). He stated that his physician, Dr. Roberts, has recommended further surgery on his heart valves and blocked arteries, but that he declined the surgery due to his previous experience. (Tr. 46). He also testified that he takes about three nitroglycerin pills per day to treat his frequent bouts of chest pain (Tr. 47). The claimant also testified that he experiences excessive fatigue and dizziness due to the medication that he takes. (Tr. 51).

The claimant contends that the ALJ failed to properly analyze his credibility with regard to the limiting nature of his condition. A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a

credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The court agrees with the claimant that the ALJ's credibility analysis was legally insufficient. The ALJ's credibility analysis here was the following: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15). The problem with this analysis (apart from vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines and *then* formulated an appropriate RFC, not the other way around, *i. e.*, the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See McFerran v. Astrue*, 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination. 'Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are

inherently intertwined.'"), [unpublished opinion], *quoting Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

The ALJ compounded this error by failing to properly analyze the treating physician opinion of Dr. Dennis Roberts. Medical opinions from a treating physician are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the records." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotation marks omitted]. When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211,

1213 (10th Cir. 2001) [quotation omitted]. And if the ALJ decides to reject a treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotations omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The ALJ mentioned the treating physician opinion of Dr. Dennis Roberts, summarizing his findings but stating only that she was assigning his opinion very little weight because it "[was] not supported by the medical evidence of record." In making this finding, the ALJ cites only the contradictory findings of state reviewing and consultative physicians. The ALJ wrote that "[t]he State agency medical consultants additionally agreed that nothing in the medical evidence of record limits the claimant to the extent noted," and specifically cited the opinion of state reviewing physician Dr. Luther Woodcock for support. (Tr. 16). Dr. Woodcock, however, noted only that Dr. Roberts' opinion that claimant was unable to sit longer than three hours in an eight-hour workday was unsupported by the medical evidence in the file. (Tr. 380). The ALJ also noted Dr. First's findings by stating that "the consultative examiner further noted that the claimant's abilities exceed those noted by Dr. Roberts." (Tr. 16). The ALJ's findings that the reviewing and consultative examiners' opinions outweighed the treating physician opinion of Dr. Roberts is legally insufficient, because when the treating physician's opinion is inconsistent with other evidence, the ALJ should examine the other evidence and determine whether it outweighs the treating physician's opinion, not

the other way around.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).  Further, the ALJ failed to note that *every one of the physician opinions in the record* found that the claimant was limited primarily by the *same* ailment: chest pain.  Their only difference in opinion was the extent of claimant's limitations related to his chest pain, and this difference alone does not suffice as a proper legal explanation for rejecting Dr. Roberts' opinion.  *See Reyes v. Bowen*, 845 F.2d at 245 ("Furthermore, the treating and examining physicians do not differ in their diagnoses.  Both physicians found that [the claimant] suffers from diabetes mellitus, obesity, and degenerative joint disease.  Their opinions differ only in their assessments of the limits these conditions place on [the claimant's] functional capacity.  The Appeals Council's conclusory statement hardly provides the justification legally required for rejecting the treating physician's opinion and accepting instead the examining physician's opinion.").

Because the ALJ failed to properly analyze both the claimant's credibility and the opinion of the claimant's treating physician, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.  The undersigned Magistrate Judge

accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma